UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH KATHERINE NAUMES,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE ARMY,<br><br>Defendant. | Civil Action No. 21-1670 (JEB) |

## MEMORANDUM OPINION

The time and effort that Plaintiff and PhD-candidate Sarah Katherine Naumes has expended on her Freedom of Information Act request may soon rival that which she has spent obtaining her doctoral degree. It has now been almost four years since Naumes filed a FOIA request seeking, among other things, various iterations of a survey that the Army administers to assess the well-being of its employees and soldiers. Following the Court's resolution of prior cross-motions for summary judgment, Defendant Department of the Army has furnished everything Naumes asked for — except for three sets of questions contained in the survey. The Army contends that those questions, for which civilian-scientist Dr. Nansook Park holds a copyright, may be withheld under the FOIA exemption for confidential commercial information. Defendant thus moves for summary judgment once more on the ground that it has now produced all non-exempt information. The Court agrees and will grant Defendant's Motion.

I.  **Background**

    A.  FOIA Exemption 4

Rather than marching straight into the trenches of this dispute, the Court begins with some basic FOIA training.  FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A). If the records fall into one of nine statutorily created exemptions, however, the Government need not turn over the requested information.  Id. § 552(b)(1)–(9).  This Court can compel the release of any records that do not satisfy the requirements of at least one exemption.  See U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 755 (1989).

    Only one of those exemptions — the fourth — is relevant here.  Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  That exemption can be broken down into three requirements: first, the information must be commercial or financial (or a trade secret, though no one suggests that is relevant here); second, it must have been obtained from a person; and third, it must be privileged or confidential.  Id.

    B.  Factual Background

Readers seeking the full narrative of the battle between these parties may look to this Court's Opinion on their earlier cross-motions for summary judgment.  Naumes v. Dep't of the Army, 588 F. Supp. 3d 23 (D.D.C. 2022).  In this second skirmish, the Court will be brief.

    Naumes, a politics PhD candidate at York University in Toronto, conducts academic research exploring "the military perception of vulnerability and trauma."  ECF No. 10-1 (First Declaration of Sarah Katherine Naumes), ¶ 2.  In service of that research, she submitted a FOIA

request to the Army in February 2019 seeking, among other things, "all versions of the Global Assessment Tool (GAT) questionnaire dating from 2008 until present." Id., ¶ 11; ECF No. 1-5 (FOIA Request Letter) at 2.  The GAT is an online survey used by the Army to "gain insight into Soldier resiliency."  1st Naumes Decl., ¶ 3 (citation omitted).  It "combines objective health and fitness metrics . . . with survey-based questions" to provide the user with "a variety of scores and metrics" for "personalized self-development training in a variety of formats."  Id.  The GAT questions come from various "scales" (a scale is a set of questions), at least some of which are developed by civilian scientists or scholars, and some of which are protected by copyright.  See ECF No. 28-6 (Third Declaration of Sarah Katherine Naumes), ¶ 2.

For two and a half years after submitting her request, Naumes waited.  She repeatedly inquired into the status of her request and corresponded with numerous government officials, but to no avail.  See 1st Naumes Decl., ¶¶ 15–50.  Having exhausted most other avenues, she filed this suit in June 2021.  See ECF No. 1 (Compl.).  That did the trick, at least partially.  The Army released two sets of documents to Naumes, first in August 2021 and then in October of that year.  Naumes, 588 F. Supp. 3d at 32.  As relevant here, however, the Government released only 773 of the GAT questions and withheld 534 of them — those that came from copyrighted sources — under FOIA Exemption 4.  Id.  The parties then cross-moved for summary judgment.

    C.  Procedural History

Those cross-motions presented some issues that are familiar to FOIA practitioners.  For example, Defendant contended that its search for responsive documents had been adequate and that all segregable, nonexempt information had been disclosed.  See ECF No. 7-2 (First Army MSJ) at 7, 15.  This Court ruled in the Army's favor on each of those issues, and neither party raises them in this round of briefing.

"The crux of [the earlier dispute]," however, and "the only truly novel issue" related to the 534 copyrighted GAT questions. Naumes, 588 F. Supp. 3d at 33, 37. Invoking Exemption 4, Defendant contended that the questions were confidential commercial information because the creators and/or publishers of the source scales, and not the Army, held the copyrights. Id. Plaintiff disagreed and rejoined that FOIA required the Army to disclose even those questions that came from copyrighted sources. Id. The dispute thus boiled down to Exemption 4's applicability, which this Court resolved only in part.

First, it found that the copyrighted questions satisfied the "commercial or financial" requirement for Exemption 4. A "copyright holder . . . naturally has a commercial interest in the information that [she] seeks to protect." Id. at 37. "[R]outine release of copyrighted information through FOIA," moreover, "would undermine the market for the creator's work" in the same way that releasing other commercial information would be harmful. Id. The questions were therefore commercial.

The second prong — whether the information was obtained from a person — was trickier. The core distinction there was "between information that is either repeated verbatim or slightly modified by the agency," which would mean that it was obtained from a person, "and information that is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's." Id. at 38 (quoting S. All. for Clean Energy v. Dep't of Energy, 853 F. Supp. 2d 60, 68 (D.D.C. 2012)). The Army's briefing was unclear about just how close the GAT questions were to the original, copyrighted scales. Id. The Court therefore asked Defendant for "supplemental briefing as to how, if at all, the questions were adapted from the copyrighted sources." Id.

4

Finally, this Court turned to the "privileged and confidential" requirement. As a threshold matter, it noted that some of the copyrighted sources had already been made publicly available and so required the Army to release any such questions. Id. at 39, 41. The non-public questions posed a thornier dilemma. Whether information is confidential under Exemption 4 turns on how the provider "customarily treats the information" sought. Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144, 148 (D.C. Cir. 2001). Ultimately, the Court concluded that it needed more information to decide how the particular providers of the copyrighted scales customarily treated those questions. As its third and final task for the Army, the Court therefore required it to "contact the copyright holders of the remaining non-public source materials and inform the Court as to their position on the release of questions from their copyrighted materials." Naumes, 588 F. Supp. 3d at 41.

Defendant has now completed its court-ordered homework. In March, the Army provided supplemental briefing about the extent to which the GAT altered or adapted copyrighted questions for the survey. See ECF No. 18 (Status Report of Mar. 14, 2022). Defendant explained that, in sum, the copyrighted questions were either copied or were only "'slightly modified' to fit the Army context, thus retaining the protected nature of the underlying work. Examples of changes for the military audience are adding the word 'Soldier' in the place of 'person.'" Id. at 5 (citations omitted).

The Army also: (1) released any information it determined was not protected by copyright; (2) released questions from sources accessible to the public, see ECF No. 25-1 (Renewed Army MSJ) at 5; and (3) contacted all of the individuals who maintain copyrights for any scales used in the GAT. See ECF No. 23 (Status Report of May 10, 2022). All but one of

those copyright holders consented to releasing their scales in response to Naumes's FOIA request. Id. at 1. Dr. Nansook Park was the sole person who did not. Id.

At this juncture, then, "[t]he only remaining information not released to Plaintiff" — and thus the only open issue in this case — "are the three scales of the GAT questions covered by the copyrights held by Dr. Park." Ren. MSJ at 2. With the issues substantially narrowed, Defendant filed a Renewed Motion for Summary Judgment, contending that it has now complied with Exemption 4's requirements and released all requested non-exempt materials. See Ren. MSJ. Plaintiff insists that the withheld scales should also be released. To probe some of the issues more fully, the Court entertained oral argument on December 14, 2022.

## II.     Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it can affect the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reps. Comm. for Freedom of the Press, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Summary judgment is only proper when the court is assured that the record justifies the result. See Ctr. For Investigative Reporting v. Customs & Border Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

**III.    Analysis**

Defendant contends that Exemption 4 protects from disclosure the three scales for which Park holds the copyright. See Ren. MSJ at 1. Plaintiff, of course, argues the opposite. See ECF No. 28 (Naumes Opp.) at 9. Once again, then, this Court will examine the three requirements for Exemption 4, but this time as applied only to Park's scales.

A. Commercial or Financial

Recall that the Army must first establish that the questions from copyrighted sources are "commercial or financial information." 5 U.S.C. § 552(b)(4). This Court previously held that the copyrighted GAT scales were "commercial" because copyright holders naturally have a commercial interest in their information. Naumes, 588 F. Supp. 3d at 37. Naumes continues to insist, however, that the "Army's GAT test is not commercial." Opp. at 13. Her sole argument is that because "[n]o other drafters of questions contained in the GAT assert any commercial interest," Park's assertion of such an interest should be doubted. Id. The Court disagrees. For one, such a position assumes without explanation that consenting to the release of copyrighted material is equivalent to relinquishing any commercial interest in that material. But a copyright holder might well consent to lowering barriers to access her information even while retaining a strong commercial interest in protecting that work from publication or distribution. Beyond that, though, even were Naumes correct that some copyright holders had minimal commercial interest in their information, that would not necessarily mean that Park specifically lacked such an interest.

The Court therefore declines to alter its prior conclusion that Park's copyrighted GAT scales qualify as "commercial."

B. Obtained From a Person

The Court did not previously reach a definitive conclusion on the "obtained from a person" requirement, but the Army's supplemental briefing equips it to do so now. This factor evaluates whether the information sought originated from a person, as opposed to from within the federal Government. Naumes, 588 F. Supp. 3d at 37–38. If the GAT reformulated Park's information to produce questions for the survey, the scales would not be from a "person" for

FOIA purposes. Id. at 38. If, on the other hand, the Army essentially reproduced or only slightly modified her material, those scales would indeed be "from a person," even though the GAT itself is government material.

Here, the Government assures the Court that the questions in the survey fall into the latter category. It explains that the scales it received from scientists were only "'slightly' modified [from their original form] to fit the Army context," including by adapting the wording of the questions for a military audience. See Status Report of Mar. 14 at 5 ("Examples of changes for the military audience are adding the word 'Soldier' in the place of 'person.'"). Naumes, for her part, no longer meaningfully contests that the information she seeks came "from a person." Prong two is thus satisfied.

C. Privileged or Confidential

The last loop to close pertains to the third Exemption 4 requirement of confidentiality. The Court will begin by applying the governing standard and then will consider Naumes's remaining objections to withholding under FOIA.

1. *Confidentiality*

Information is "confidential" for the purpose of Exemption 4 if it is "of a kind that would customarily not be released to the public by the person from whom it was obtained." Critical Mass Engine Project v. Nuclear Regul. Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992); see also Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2363 (2019) (holding that for information to be confidential, "the person imparting it" must "customarily [keep it] private"). "The critical question in so determining is 'how the particular party customarily treats the information, not how the industry as a whole treats the information.'" Naumes, 588 F. Supp. 3d at 38 (quoting Ctr. for Auto Safety, 244 F.3d at 148). "A party can voluntarily make protected

disclosures of information, and as long as the disclosures are not made to the general public, such disclosures do not constitute customary disclosures." Ctr. for Auto Safety, 244 F.3d at 148.

The only question here, then, is whether Park "customarily" releases her scales to the public. The answer is plainly no. Her own declaration, which Defendant solicited at the Court's request, is unequivocal:

> I maintain the copyright over three scales included in the GAT. I <u>do not waive</u> or otherwise relinquish in any way my claim to those copyrights. Those GAT scales were <u>developed for use only by the Army</u> and for the limited purpose of promoting soldiers' mental health and overall well-being. I have received multiple requests to share the same information sought by Ms. Naumes, including a request from the Harvard Business School. <u>Each time I have declined</u>, as I do in this case.

ECF No. 25-4 (Declaration of Dr. Park) at 2 (emphasis added). Apparently, Park has yet to disclose her scales to <u>any</u> entity or individual other than the Army. Her declaration thus provides sufficient evidence that she does not "customarily" release them to the general public. See Safecard Servs., 926 F.2d at 1200 (noting that declarations supporting invocation of FOIA exemptions are "accorded a presumption of good faith"). That is all it takes to satisfy Exemption 4's confidentiality requirement in this Circuit. Naumes, 588 F. Supp. 3d at 38.

Naumes briefly argues that because the Army did not provide Park with any "assurance of confidentiality" when she first shared her scales with the Government, those questions are not confidential under Exemption 4. See Opp. at 20. The Court already explained in its prior Opinion, however, that "[t]his Circuit does not require assurances of privacy as a separate component of confidentiality." Naumes, 588 F. Supp. 3d at 40; see also Food Mktg. Inst., 139 S. Ct. at 2363 (declining to decide whether confidentiality requires government assurances of privacy); Renewable Fuels Ass'n v. EPA, 519 F. Supp. 3d 1, 12 (D.D.C. 2021) (explaining why

there is no such requirement under current Circuit law, as supplied by Critical Mass). Plaintiff offers no reason to alter that conclusion.

Protecting Park's scales from disclosure has the added benefit of comporting with Exemption 4's purpose. "[D]isclosure under FOIA balances the public's interest in maintaining an informed citizenry . . . with the Government's interest in access to data in making intelligent well informed decisions, and private interests in protection from the competitive disadvantages that would result from disclosure." Ctr. for Auto Safety, 244 F.3d at 148 (internal quotations omitted). Were the Army to release Park's scales in defiance of her insistence that they remain confidential, researchers like her who "seek[] to do business with the Government will be less likely to trust [it] with copyrighted information" in the future. See ECF No. 30 (Reply) at 3. That would interfere with the Government's access to data and could have ripple effects for "military readiness and national security." Id.

The information provider's interests, which are also relevant under Exemption 4, strongly favor exemption from disclosure, too. Critical Mass, 975 F.2d at 878. Park is particularly concerned about the effect of disclosure on the market for her work because she wishes to publish the scales herself in the future. She explains that release of the scales via FOIA would render them publicly available and thus "decimate[]" the value of her copyrights. See Park Decl. at 2. Indeed, were this Court to order the Army to disclose Park's scales to Naumes in this action, anyone could get their hands on the scales by submitting a FOIA request. Stonehill v. IRS, 558 F.3d 534, 539 (D.C. Cir. 2009) ("Documents released in a FOIA action must be made available to the public as a whole . . . ."). That would create a near-costless alternative to paying for access to Park's work if it is ever published, which would almost certainly affect the market for it.

In sum, this is a case where both law and policy point clearly in the same direction: Park's scales should be withheld under Exemption 4.

### 2. *Counterarguments*

Much of Plaintiff's Opposition talks past the Government's Motion. For example, Naumes spends most of her brief building the case that her intended use of Park's scales is compliant with copyright law. She notes that the educational nature of her work, as well as her intent to modify and transform the copyrighted materials for an academic review or critique, would render her use of the scales "fair use." Opp. at 6–8, 13. Naumes adds that because fair use is a mixed question of law and fact, this case is not "ripe for analysis." Id. at 9–13.

Although Naumes is a sympathetic requester, her fair-use arguments are entirely misplaced. As she conceded at oral argument, Exemption 4 leaves no room for consideration of how the recipient of FOIA-requested information will use the allegedly confidential information. Fair use, moreover, is typically understood as a defense against a copyright-violation claim. See, e.g., Google LLC v. Oracle Am., Inc., 141 S. Ct. 1183, 1200 (2021). Yet Naumes herself points out that there is "no allegation by Defendant [in this case] that [she] has violated the Copyright Act." Opp. at 8. How could there be? The premise of this suit is that she lacks access to the copyrighted material in the first place. On top of that, the Army does not hold the copyright to the scales Plaintiff seeks and so could not accuse her of a copyright violation. The only person who could bring a copyright claim against Naumes for her use of the scales would be Park, who is not a party to this case. For all of these reasons, and because Plaintiff's counsel disclaimed reliance on the doctrine at oral argument, the Court declines to further consider Plaintiff's fair-use contentions.

Naumes next recycles several assertions that this Court rejected in its Opinion on the parties' prior cross-motions for summary judgment. First, she maintains that the scales are not confidential because they have been made available to the many people who take the GAT, which is not a secured test. See Opp. at 20. This Court stands by its prior reasoning:

> [T]o be considered confidential, information must be "of a kind that would customarily not be released to the public by the person [or entity] from whom it was obtained." That does not necessarily entail the use of a secure test registration, as the source material could still be protected from release even if the entire test is not registered. Indeed, these materials were already copyrighted at the time the Army received them for use in the GAT, so adding an additional layer of protection would not necessarily have been needed.

Naumes, 588 F. Supp. 3d at 41 (citation omitted).

Second, Naumes contends that the Government failed to meet its burden of showing foreseeable or specific harm from disclosure of the remaining scales. See Opp. at 11, 17; see also Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 357–58 (D.C. Cir. 2021) ("[A]gencies may only withhold information under a FOIA exemption if the agency reasonably foresees that disclosure would harm an interest protected by an exemption.") (internal quotations omitted). Once again, the Court relies on its previous analysis that rejected this position. Naumes, 588 F. Supp. 3d at 42–43 (Defendant "sufficiently laid out the basis of its foreseeable harm from disclosing copyrighted information."). The Army has shown that disclosure could cause financial harm both to the copyright holder and to itself from litigation over the disclosures. Id. at 42. The potential harm to government interests from disclosure is especially notable in cases like this one, where confidential information was voluntarily provided to the Government. In such cases, the Circuit has instructed that the harm is "common sense." Critical Mass, 975 F.2d at 879. That is so here as well.

Last, in the final pages of her Opposition, Naumes suggests that the information she seeks may already be public. Plaintiff reveals that she was able to locate a "full and unredacted copy of [one version of the] GAT on a public website," which has allowed her to isolate "most of the remaining questions" by cross-referencing the document she found with the scales she received from the Government. See Opp. at 22 (quoting 3rd Naumes Decl., ¶ 7). Naumes found this particular copy on the website for the Office of Information and Regulatory Affairs, which sits within the Executive Office of the President. Id.; see also ECF No. 28-9 (OIRA GAT Copy). She therefore asks Defendant to "immediately release any remaining GAT questions" to comply with this Court's prior Order requiring disclosure of any scales available to the general public. See Opp. at 22.

Unclear about precisely what Naumes wanted, the Court at oral argument asked her counsel why Plaintiff continues to pursue this suit if she has already found what she is looking for. See Oral Arg. Tr. at 2:2–3. Counsel explained that because there are multiple versions of the GAT, only one of which OIRA published, Naumes still seeks access to Park's scales as they appear in the remaining iterations of the survey. Id. at 2:15–18. If that is the case, however, then the versions of Park's scales that she seeks are not public.

To the extent she wants an official Army copy of what she did find on the OIRA website — something she did not mention at oral argument — then she would have to invoke the official-acknowledgment exception, which is a doctrine that permits courts to compel the release of publicly released information "even over an agency's otherwise valid exemption claim." Mobley v. CIA, 806 F.3d 568, 583 (D.C. Cir. 2015). But she makes no mention of that doctrine, despite it being her burden to show that its requirements are satisfied. Id. Even had she invoked it, though, her effort would likely fail. It is well established that "[d]isclosure by one federal

14

agency does not waive another agency's right to assert a FOIA exemption." Id.; see also Knight First Amend. Inst. at Columbia Univ. v. CIA, 11 F.4th 810, 816 (D.C. Cir. 2021). Here, the unredacted GAT that Naumes discovered was published by OIRA, not the Army. See Reply at 4 n.1 ("The Army is not a component of the OIRA and there is no indication that the PDF was meant for public consumption.").

This Court thus concludes that however one understands Naumes's argument, the publication of this version of the GAT does not affect the Army's right to invoke Exemption 4.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Renewed Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: December 19, 2022