**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH KATHERINE NAUMES, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1670 (JEB) |
| ) | |
| DEPARTMENT OF THE ARMY, ) | |
| Defendant. ) | |

**FOURTH DECLARATION OF SARAH KATHERINE NAUMES**

I, Sarah Katherine Naumes, do declare, subject to the penalties of perjury, that the following statements are true and correct to the best of my knowledge and belief.

1. I am the Plaintiff in the above-entitled civil action and I am prepared to testify in open court or in a deposition to the truth of all matters referred to in this Declaration.

2. I make this declaration in support of Plaintiff's motion for reasonable attorney fees and costs.

3. I have reviewed the Declarations I submitted to this Court, dated November 21, 2021, dated April 4, 2022, and dated October 10, 2022. All of the statements in those previously submitted Declarations are true and correct.

4. I have reviewed the receipts for the filing fee and the postage costs I incurred during the course of this judicial review. The receipts are attached to the Declaration of C. Peter Sorenson as Exhibits G and H, respectively. I advanced these costs, they are reasonable in

all respects and these costs should be awarded by the Court, as I have substantially prevailed in this judicial review.

5. My attorney requested that Defendant narrow the issues in dispute. See Exhibit B to the Declaration of C. Peter Sorenson. Defendant refused to narrow, even to the point of not agreeing to the costs of filing the case. Defendant continues its practice of delay, forcing the Court to order them to do what they should do.

6. This FOIA request has illustrated that the Global Assessment Tool is based heavily on pre-existing psychological scales drafted initially for other purposes and reworked for the military context. In an analysis of the Global Assessment Tool, Christopher Peterson, Nansook Park, and Carl Castro write, "History teaches us that assessment developed in the military does not just stay in the military (2011: 16)." Just as these scales were drawn from elsewhere to create a tool for the Army to use to assess resilience, the Global Assessment Tool informs cultural perceptions of what it means to be a resilient member of society. The Global Assessment Tool is not simply restricted to use in the military. The scales, though currently partitioned, are used in schools, workplaces, and trauma centers. There is a public need to be able to validate the Global Assessment Tool not only for the sake of veteran wellbeing, but for civilian populations as well.

7. There has been public interest in the Global Assessment Tool since its development because the experiences of traumatized soldiers do not stay within the military. These specific records offer a public understanding of how the Army perceives resilience and, thus, how it is treating war-related trauma and injury. These are not issues that are restricted to a military setting, which is precisely why the Global Assessment Tool was developed in the first place. The Global Assessment Tool became an Army solution to

PTSD and veteran suicide, which were again in the public eye during the wars in Iraq and Afghanistan. If there is a tool that purports to enhance the resilience of soldiers, potentially decreasing negative outcomes, would the United States not want to distribute that tool to families impacted by critical issues and conditions such as PTSD? Moreover, there is public interest because this same tool is likely (if this has not already occurred) to be repurposed for the civilian population, which also experiences trauma in the form of physical, sexual, emotional abuse, and other forms of violence. The public deserves to know whether the Global Assessment Tool works and whether this publicly funded instrument does in fact increase resilience.

8. To be clear, I have no commercial interest in the information that was acquired as a result of the work I did to bring the Army's records to light. As has been previously stated to the Court, my initial primary reason for wanting the records at issue in the case was to help with the research I am doing for my Ph.D. dissertation. I plan on using the publicly available material on the Global Assessment Tool in my dissertation and the dissertation will be publicly available to other academics, the public, and policymakers. I am happy to share these records with fellow academics to encourage rigor and reproducibility, which are hallmarks of scientific inquiry.

9. I have not paid any money, for fees, to Sorenson Law Office or anyone else to represent me in this action. Without their help and the significant effort they have made and are continuing to make I would not have been able to get the important records involved in this case, which has always been directed toward public dissemination within the parameters of institutionally-approved research and reporting. I did not have and do not currently have the financial resources to retain and pay lawyers to do the specialized

work of helping me obtain records under FOIA from one of the largest armies in the world. The timeline of my efforts to obtain this material is outlined in my first Declaration (9-1) and shows clear delays and a complete lack of records produced by the Department of the Army prior to retaining lawyers.

10. It was not until I filed suit in federal court that the Department of the Army released any records compliant with my request. The first released documents were sent to me on August 6, 2021, clearly prompted by the impending Minute Order due to this Court. What was produced in the initial release included a number of redactions and completely missed the ArmyFit recommendations. These redactions were underscored by a history of Department of the Army representatives indicating a lack of recordkeeping about who (if anyone) held copyright over the scales comprising the Global Assessment Tool. This release did not make clear that those recordkeeping issues had been resolved. After motions by my lawyers and upon prompting by the court on February 28, 2022, the Department of the Army released the ArmyFit recommendations on March 18, 2022. This order was framed by the court such that: "Defendant shall search for and release the pages offering Spiritual, Family Fitness, Social Fitness, and Physical Fitness Dimension Recommendations." On April 14, 2022, all but three of the scales withheld in the original release were supplied to me when the purported copyright holders were approached. This order was framed by the court on February 28, 2022 such that: "Defendant shall contact the copyright holders for the survey questions in the remaining non-public sources and inform the Court as to their position on release by March 14, 2022; and Defendant shall provide supplemental briefing as to how the GAT survey questions are assembled from the underlying sources by March 14, 2022." To be clear, I had not received a single

     document compliant with my request, which was filed on February 28, 2019, prior to taking legal action on June 22, 2021. Further, aside from the initial release on August 6, 2021, all other releases were directly prompted by litigation.

11. The public interest in the Global Assessment Tool is noted by Dr. Kenneth MacLeish, Associate Professor of Medicine, Health & Society and of Anthropology at Vanderbilt University, in his Declaration in this case (28-3; pp.15) where he writes, "The GAT has been deployed at tremendous scale to address high-stakes problems of mental health. Massive resources have been expended on CSF2 and other military mental and behavioral health programs: the initial program was produced via a $31 million no-bid contract with University of Pennsylvania's Positive Psychology Center, and the program may have cost up to $500 million in the years since (Defraia 2019; Singal 2021). Yet questions about its effectiveness and implications remain. In this context, additional scrutiny and research of CSF2 and the GAT, including the very sort pursued by Ms. Naumes, are important and of significant scholarly and public value." Dr. David Kieran, the Colonel Richard R. Hallock Distinguished Chair in Military History and Associate Professor of History at Columbus State University, further illustrates the public value of release of these documents in his Declaration in this case (28-5; pp. 15) when he writes, "Research into Army resiliency training such as Ms. Naumes is conducting is not simply a matter of academic inquiry; it is also one of public health in which every American should be invested. As USA Today reported on March 22, 2022, 'The Pentagon's latest annual report on suicide from 2020 found that for active-duty troops, the rate of suicide increased from 20.3 per 100,000 in 2015 to 28.7 per 100,000 in 2020.' That the active-duty suicide rate has continued to rise despite the Army's considerable investment

in resiliency raises urgent questions that Ms. Naumes' study can help answer." While this case concluded with three scales still withheld because of copyright assertions, there remains enduring public interest in this and other publicly funded tools utilized to enhance veteran mental health and well-being. The more public these tools are, the better able the United States is to both research and support public health.

12. The Department of the Army changed their position on withholding records pertaining to the Global Assessment Tool multiple times in the course of this case. First, on August 6, 2021, the Department of the Army had a unilateral change in position in their previous complete withholding of these records. On March 18, 2022, the Department of the Army voluntarily supplied the ArmyFit recommendations. On April 14, 2022, the Department of the Army voluntarily supplied all but three remaining scales of the Global Assessment Tool. After that point, there were points when the Department of the Army indicated a willingness to supply the remaining three scales.

13. One final matter for the Court: I listened to the hearing before Judge James Boasberg on December 7, 2022. In that hearing, Mr. Haberland, counsel for the Department of the Army, expressed that the Army had not released the version of the Family GAT that I accessed online. His statement contradicts information on this website: https://omb.report/icr/201901-0702-003/doc/92795801. This website illustrates that the Family GAT was released to the Office of Management and Budget by the Department of the Army. The information was, apparently, released by the Office of People Analytics, Department of the Army to the Office of Management and Budget as a "public collection" in 2019.

14. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 9th day of February, 2023 at Merced, CA.

/s/ Sarah Katherine Naumes
Sarah Katherine Naumes