**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ) | |
| SARAH KATHERINE NAUMES, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No. 21-1670 (JEB) |
| ) | |
| DEPARTMENT OF THE ARMY, ) | |
|     Defendant. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR REASONABLE ATTORNEY FEES AND COSTS

### I.

### Introduction

Plaintiff Sarah Katherine Naumes ("Ms. Naumes" or "Plaintiff"), has moved the Court for an award of attorney fees and other litigation costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), in civil action against Defendant United States Army ("Army" or "Defendant"). The law states, "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* As explained in more detail below, in this case Plaintiff received most of the records at issue, but only after Plaintiff filed her Complaint [Document 1] and received two favorable Court orders: the Order dated February 28, 2022 [Document 15], and the Minute Order dated April 11, 2022.

Plaintiff eventually received "most of" these records. ¶ 10 Third Declaration of Sarah

Katherine Naumes (hereafter "Third Naumes Decl.") [Document 28-6].

On behalf of Plaintiff, Plaintiff's attorney filed her Complaint [Document 1] on June 22, 2021, Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Document 9] and Cross-Motion for Summary Judgment [Document 10] on November 23, 2021, and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment [Document 14] on January 14, 2022. In these documents, Plaintiff provided extensive information to the Court that the search for responsive records was seriously flawed. Further, the materials filed resulted in an Order compelling the defendant to "search for and release" the pertinent pages of records. [Document 15].

Ms. Naumes explains many of the details in her extensive Fourth Declaration of Sarah Katherine Naumes (hereafter "Naumes Decl.") Ex. A [filed herein]. Ms. Naumes' academic work is fully discussed, explained and documented. The public interest facet, and the fact she does not have a commercial interest in the records requested, are documented in Ms. Naumes' prior declaration. ¶ 9 Third Naumes Decl. [Document 28-6].

In her declaration, Plaintiff discusses the importance of the records provided, stating that studying the assessments is critical to treating mental health of veterans and preventing suicide. ¶ 11 Naumes Decl. Ex. A [filed herein].

Accordingly, because Plaintiff substantially prevailed in this litigation, and the records at issue were sought in furtherance of the public's interest rather than for any commercial or private interest, Plaintiff is both eligible for, and entitled to, an award of reasonable fees and costs. Plaintiff has provided extensive detail on both the reasonableness of the rates sought and the necessity and reasonableness of the time. ¶¶ 34, 35 Declaration of C. Peter Sorenson (hereafter "Sorenson Decl.") Ex. B [filed herein]. Plaintiff has provided a summary table

showing the summary of all litigation costs and attorney's fees. Ex. C. [filed herein]. Billing

judgment and reductions are provided. Ex. J [filed herein].

## II.

## <u>Background</u>

Plaintiff, Ms. Naumes, is "an Academic Coordinator with the University of California,

Merced and a Ph.D. candidate (ABD) in the Department of Politics at York University in

Toronto, Canada." ¶ 2 Declaration of Sarah Katherine Naumes (hereafter "First Naumes Decl.")

[Document 10-1].

Plaintiff initiated her doctoral degree in 2013 at York University and two years of

coursework. ¶ 9 First Naumes Decl. [Document 10-1]. Her dissertation proposal was approved in

May 2016. *Id.* Six years' funding relied upon the dissertation topic. *Id.*

Ms. Naumes wrote a request for records to obtain materials for academic research related

to the Global Assessment Tool (hereafter "GAT"). ¶ 17 First Naumes Decl. [Document 10-1].

Plaintiff submitted a request for records, maintained by Defendant Army and the request was

received by the Army online on May 28, 2019. ¶ 17 First Naumes Decl. [Document 10-1].

Plaintiff's Complaint was filed on June 22, 2021 [Document 1]. Plaintiff's Cross-Motion

was filed on November 23, 2021 [Document 10]. Plaintiff's Reply was filed on January 14, 2022

[Document 14]. The first Order was released on February 28, 2022 [Document 15]. Plaintiff's

Response was filed April 4, 2022 [Document 22]. The Minute Order was issued on April 11,

2022. A Motion for Extension was filed August 23, 2022 [Document 26], and the Plaintiff's

Opposition to Defendant's Renewed Motion for Summary Judgment was filed on October 11,

2022 [Document 28]. To summarize the record before the Court, prior to bringing this action,

Plaintiff received nothing but a runaround from the Army.. ¶¶ 18-55 First Naumes Decl. [Document 10-1].

In the Order dated February 28, 2022, the Court ordered that ". . . Defendant shall search for and release the pages offering Spiritual, Family Fitness, Social Fitness, and Physical Fitness Dimension Recommendations by March 14, 2022; 3. Defendant shall release the GAT survey questions that derive from sources available to the general public by March 14, 2022; 4. Defendants shall contact the copyright holders for the survey questions in the remaining non-public sources and inform the Court as to their position on release by March 14, 2022; and 5. Defendant shall provide supplemental briefing as to how the GAT survey questions are assembled from the underlying sources by March 14, 2022. . . ." [Document 15].

In the Minute Order dated April 11, 2022, the Court ordered the following: ". . .the Court Orders that Defendant shall submit a further status report regarding its ongoing contact with the copyright holders by May 11, 2022. In the interim, Defendant shall provide to Plaintiff any questions derived from sources where the copyright holder has already consented to release . . ." Minute Order, April 11, 2022.

The records at issue in this case have a high public interest value. Plaintiff is concerned about the ethical applications of psychological assessments by researching whether the Global Assessment Tool treats individuals "as autonomous agents," ¶ 9 Third Naumes Decl. [Document 28-6].

Other academic professionals remain extremely interested in this work. For example, Dr. Macleish studies "firsthand experiences of the US wars in Iraq and Afghanistan, war-related mental illness, servicemember and veteran suicide, veteran transition and involvement in the criminal justice system, and toxic exposure among military populations." ¶ 2 Declaration of Dr.

Kenneth Thomas Macleish [Document 28-3]. He focuses on "how diagnostic labels and behavioral health interventions are incorporated into military life and into the broader public understanding of war in the US." *Id.*

Furthermore, a leading author on the treatment of Post-Traumatic Stress Disorder states that "[c]ontinued research into military mental health and particularly resiliency is critical to our emerging understanding of the impact of the Iraq and Afghanistan Wars on the U.S. military, the active duty and veteran population, and American culture more generally." ¶ 12 Declaration of Dr. David Kieran [Document 28-5].

In her various motions and memoranda, Plaintiff provided many reasons why the search that had previously been undertaken by the agency was not adequate as a matter of law. In particular, the Army released five screenshots that "illustrate to a prospective user of the GAT survey the types and genres of recommendations the system provides once a user has completed the survey." Section 6C, p. 16, Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment [Document 10-20]. Defendant failed to pursue embedded text links. *Id.* Also, Defendant told the Plaintiff to "explore the information available" via the portal, and Plaintiff later found "a[n] Army powerpoint about GAT." ¶ 3 First Naumes Decl. [Document 10-1] (quoting Exhibit 115).

Plaintiff's counsel conferred with defendant's counsel prior to motion. Plaintiff submitted a settlement proposal on January 6, 2023. Plaintiff attempted to narrow the issues in an email to Defendant on January 10, 2023, asking Defendant to "cooperate with Plaintiff and assist the Court to narrow the issues involved in the fee motion." Ex. I.

Plaintiff has today filed the following documents to assist the Court:

Exhibit A: Fourth Declaration of Sarah Katherine Naumes

Exhibit B: Declaration of C. Peter Sorenson

Exhibit C: Summary of Work By Major Phase and Litigation Costs

Exhibit D: MyCase Time Records for Sorenson Law Office

Exhibit E: Kardell Time Records

Exhibit F: Fitzpatrick Matrix

Exhibit G: Filing Fee Receipt

Exhibit H: Postal Receipt to Serve Defendant

Exhibit I: January 10, 2023, Email Showing Attempt to Narrow

Exhibit J: Deletions of Time Billing and Summaries

  The rates for the time are provided in the Fitzpatrick Matrix, Ex. F [filed herein], which was released by the United States Attorney for the District of Columbia in November of 2021. ¶ 27, Sorenson Decl. Ex. B [filed herein]. The Fitzpatrick Matrix has been developed to provide a reliable assessment of fees charged for complex federal litigation in the District of Columbia. Footnote 4, Ex. F [filed herein]. The Fitzpatrick Matrix uses years of experience practicing law as a factor in the rate computation of a reasonable fee. The Matrix states: "The years in the column on the left refer to an attorney's years of experience practicing law. Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school. If the year of law school graduation is unavailable, the year of bar passage should be used instead." Footnote 4, Exhibit F. Mr. Sorenson has been a licensed lawyer since 1982. ¶ 3 Sorenson Decl. Ex. B [filed herein]. Using the Fitzpatrick Matrix, Mr. Sorenson's experience – on the Fitzpatrick Matrix – is properly listed at 18 and 19 years' experience as a practicing attorney. ¶ 27 Sorenson Decl. Ex. B [filed herein].

For ease of billing and presentation, only two rates and two specific years, 2021, and 2022, are being used in this case from The Fitzpatrick Matrix. Plaintiff used the 2021, and 2022, rates for Mr. Sorenson at $653 for 2021, and $684 per hour for 2022. Likewise, the hourly rate for all paralegals is $200 for 2021, and $207 per hour for 2022. ¶ 27, 28 Sorenson Decl. Ex. B [filed herein]. Because most of the work on this case was completed in 2021, and 2022, and with no update yet for rates in 2023, only these two years of The Fitzpatrick Matrix are used.

Applying 2021 and 2022 rates, and not using 2023 rates, shows billing judgment, a factor the Court takes into consideration in making a fee award.

In addition to time worked by Mr. Sorenson and his paralegals, Plaintiff has also incurred two specific "other litigation costs reasonably incurred": 1) the $402 filing fee and 2) the $26.15 in postal fees to serve the Defendant at the beginning of the case. The receipt for the filing fee is attached as Exhibit G [filed herein]. The postal receipt is attached as Exhibit H [filed herein].

## III.

### Argument

A. AN AWARD WOULD FULFILL THE PURPOSE OF FOIA'S FEE-SHIFTING PROVISION

As has been noted, FOIA contains a "fee-shifting" provision permitting the District Court to award reasonable attorney fees and litigation costs to a plaintiff who has substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). As the Court of Appeals for this Circuit long ago explained, FOIA allows an award of attorney fees and costs to a prevailing plaintiff for two independent purposes: (1) "to encourage Freedom of Information Act suits that benefit the public interest," and (2) to serve "as compensation for enduring an agency's unreasonable

obduracy in refusing to comply with the Freedom of Information Act's requirements." *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980). "A grudging application of this provision . . . would dissuade those who have been denied information from invoking their right to judicial review . . . ." *Nationwide Bldg. Maint., Inc. v. Sampson,* 559 F.2d 704, 715 (D.C. Cir. 1977).

The provision for attorney fees under FOIA was enacted " 'on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.' " *Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C.Cir.1977) (citing S.REP. NO. 93–854, at 17)).

B.  FOIA'S TWO STEP PROCESS JUSTIFIES THE COURT AWARDING FEES

FOIA's attorney fees and litigation costs provision requires courts to engage in a two-step substantive inquiry: 1) The court must determine 1) if the plaintiff is eligible for an award of fees and costs and 2) if the plaintiff is entitled to the award. The award is always subject to the sound discretion of the District Court. As demonstrated below, Plaintiff clearly meets *both* criteria.

In order to be eligible for attorney fees, therefore, a FOIA plaintiff must have a representational relationship with an attorney. *Kooritzky v. Herman*, 178 F.3d 1315, 1323 (D.C. Cir. 1999). Here, there is a clear relationship between Mr. Sorenson and his law firm and the representation of the Plaintiff in this case. ¶ 2 Sorenson Decl. Ex. B [filed herein].

FOIA also provides for an award of costs of litigation. Costs in a FOIA case have been interpreted to include photocopying, postage, typing, transcription, parking, and transportation expenses, in addition to routine filing costs and marshals' fees paid at the trial level, as well as the fees paid to a special master appointed by the court to review documents on its behalf. *Wash.*

*Post v. Dep't of Def.*, 789 F. Supp. 423, 424 (D.D.C. 1992) (apportioning special master's fees equally between plaintiff and government). In this case, Plaintiff is requesting costs of litigation as outlined above, including filing fees (Ex. G, [filed herein]) and postal fees (Ex. H, [filed herein]), as well as reasonable attorney fees and costs (Ex. C, Ex. J. [filed herein]).

      C. PLAINTIFF IS ELIGIBLE FOR AN AWARD

      Assuming that a plaintiff qualifies under the threshold standards described above, the next step is to determine whether the plaintiff is eligible for a fee award under the circumstances of the case. This, in turn, requires a determination that the plaintiff has "substantially prevailed" within the meaning of FOIA's subsection (a)(4)(E)(ii). A FOIA complainant has "substantially prevailed" if the complainant "obtained relief through either — (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). This standard was included in FOIA as part of the FOIA amendments made in 2007 by the "Openness Promotes Effectiveness in our National Government Act of 2007," or the "OPEN Government Act." OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (codified at 5 U.S.C. § 552(a)(4)(E)(ii)).

      Plaintiff has previously provided the Court with a timeline of when she received records in this case. ¶¶ 18-55 First Naumes Decl. [Document 10-1]. The Army dramatically changed its position over the course of the litigation, either voluntarily or as a response to Court orders. On October 23, 2021, the Army did provide five screenshots, after the filing of the complaint and days before the Defendant filed its Motion for Summary Judgment. ¶ 54 First Naumes Decl. [Document 10-1]. The Court issued additional Court orders. By October of 2022, Plaintiff had

"access to most of the questions in the GAT, including most of Dr. Park's questions." ¶ 10 Third Naumes Decl. [Document 28-6].

Here, there was a judicial Order forcing Defendant to change its position. [Document 15]. FOIA provides a second statutory basis for eligibility. The second eligibility test rests on a determination that there was a voluntary or unilateral change in position by the agency, provided the claim "is not insubstantial." Under this standard, courts determine whether the change in the agency's position would not have occurred but for the filing of the lawsuit. As explained by the United States District Court for the District of Columbia, relief is not limited to disclosure of records alone.

Here, the Plaintiff became eligible because Defendant voluntarily changed its position after the filing of the Complaint and the Court ordered Defendant to release records. The timing of the Defendant's decisions is important.

First, as Plaintiff stated, "the Department of the Army released full scales to [Plaintiff] in October 2021 without indication of which questions are utilized in which iterations of the GAT," ¶ 10 Third Naumes Decl. [Document 28-6].

Second, after the Court's Order dated February 28, 2022 [Document 15], Defendant released more records.

Thus, Plaintiff was successful, as "the Court require[d] that Defendant: 1) release any questions from sources that are accessible to the general public; 2) contact the copyright holders of the remaining non-public source materials and inform the Court as to their position on the release of questions from their copyrighted materials; and 3) provide supplemental briefing on how it incorporates questions into the GAT from copyrighted materials." *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23, 41 (D.D.C. 2022) [Document 16].

Third, between the Minute Order dated April 11, 2022, and the filing of Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment on October 11, 2022 [Document 28], Defendant released further survey questions. "Defendant, in response to this Honorable Court's order, released 773 GAT survey questions." ¶ 12, Plaintiff's Statement of Material Facts. [Document 28-2]. Plaintiff "now ha[d] access to most of the questions in the GAT, including most of Dr. Park's questions." ¶ 10 Third Naumes Decl. [Document 28-6].

The facts of the case at bar are significantly different from those presented in *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. March 22, 2011). There, the Court denied a motion for attorney fees despite the FOIA request in that case being "extraordinarily delayed" because Defendant conducted multiple searches prior to Plaintiff's filing of the judicial review. In the case at bar, there was one "final" search —until Plaintiff's Cross-Motion for Summary Judgment.

The United States District Court for the District of Columbia has found that discretionary disclosures made during litigation create eligibility for a plaintiff seeking attorney fees and costs. The court found the plaintiff was eligible for fees based on the defendant's discretionary disclosure of records previously withheld under Exemption 5. *Judicial Watch v. Dep't of Just.*, 878 F. Supp. 2d 225, 233 (D.C.D. 2012). The court reasoned that "[f]or purposes of determining fee eligibility, the DOJ's 'discretionary' disclosure of documents that it had previously withheld as exempt plainly constitutes 'a voluntary or unilateral change in position by the agency' caused by [the] litigation." *Id.*

Finally, FOIA provides that even if an agency has a voluntary or unilateral change in position, the plaintiff's claim must not be "insubstantial." On this point, the District Court has written, "While the Court agrees that the sum total of plaintiff's victory . . . was small, the test is

not merely the size of the relief obtained but whether plaintiff obtained some judicial relief on the merits that resulted in a 'change in legal relationship' between the parties." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 130 F. Supp. 3d 156, 162-63 (D.D.C. 2015).

The order by Judge Boasberg on February 28, 2022, ordered that the "Defendant shall search for and release the pages offering Spiritual, Family Fitness, Social Fitness, and Physical Fitness Dimension Recommendations by March 14, 2022; 3. Defendant shall release the GAT survey questions that derive from sources available to the general public by March 14, 2022; 4. Defendants shall contact the copyright holders for the survey questions in the remaining non-public sources and inform the Court as to their position on release by March 14, 2022; and 5. Defendant shall provide supplemental briefing as to how the GAT survey questions are assembled from the underlying sources by March 14, 2022." [Document 15]. Plaintiff also achieved success when the Court issued the Minute Order saying, ". . .the Court Orders that Defendant shall submit a further status report regarding its ongoing contact with the copyright holders by May 11, 2022. In the interim, Defendant shall provide to Plaintiff any questions derived from sources where the copyright holder has already consented to release . . ." Minute Order, April 11, 2022. Thus, Plaintiff was mostly successful due to her and her counsel's efforts, as Ms. Naumes said in her Third Declaration filed October 11, 2022, "I now have access to most of the questions in the GAT, including most of Dr. Park's questions." ¶ 10 Third Naumes Decl. [Document 28-6].

"In evaluating a fee petition, the district court assesses whether the plaintiff 'substantially prevailed' within the meaning of the statute. 5 U.S.C. § 552(a)(4)(E)(i)." *Kwoka v. Internal Revenue Serv.*, 989 F. 3d 1058, 1064 (D.D.C. 2021). In this case at bar, Plaintiff is clearly eligible

to recover attorneys' fees under the second avenue, as it obtained *most* of the relief it requested after the filing of this lawsuit, following the Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment. ¶ 10 Third Naumes Decl. [Document 28-6]. The receipt of over 700 pages of additional records – beyond those originally provided by Defendant – can hardly be called insubstantial. In this case, Defendant released more than 100 times more pages than it had prior to the litigation's start and Plaintiff's Cross-Motion [Document 10].

      D. PLAINTIFF IS ENTITLED TO AN AWARD

      Even if a plaintiff satisfies the threshold eligibility standards, a court still must exercise its equitable discretion in separately determining whether that plaintiff is entitled to an attorney fee award. This discretion ordinarily is guided by four traditional criteria that derive from the FOIA's legislative history. These factors are: (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *Davy v. Cent. Intelligence Agency*, 456 F.3d 162, 166 (D.C. Cir. 2006). "No one factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. Cent. Intelligence Agency,* 550 F.3d 1155, 1159 (D.C. Cir. 2008).

      "The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA. A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent. *Id.* at 715; *see also LaSalle Extension Univ. v. Fed. Trade Comm'n,* 627 F.2d 481, 484 (D.C.Cir.1980)." *Id.*

E. PLAINTIFF SATISFIES ALL FOUR FACTORS

    1.  FIRST FACTOR

The first factor—the "public benefit" factor—"speaks for an award [of attorney fees] when the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). The first factor also looks to the public benefit derived from the case. As the Court of Appeals long ago explained, "successful FOIA litigants *enhance the public interest by bringing the government into compliance with the law.*" *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977) (emphasis added). Thus, "[a]s agents of the national policy of public disclosure, *it is equitable that they be awarded for their service.*" *Id.* (emphasis added). Accordingly, this public benefit alone is sufficient to award Plaintiff her attorneys fees and costs. Indeed, the Court of Appeals has emphasized that "FOIA's attorney's fees provision . . . was designed to lower the 'often . . . insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA." *Tax Analysts v. Dep't of Just.*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) (citation omitted). Thus, "the award of FOIA counsel fees has as its fundamental purpose the facilitation of citizen access to the courts, and should not be subject to a grudging application." *First Amendment Coal. v. Dep't of Just.*, 878 F.3d 119, 1130 (9th Cir. 2017) (internal quotation marks omitted).

In addition, as demonstrated above and in the declarations submitted to the Court during phase 6, there is substantial public interest in the research of the GAT surveys. The phases of the case are discussed more fully in the Sorenson Declaration. ¶¶ 20, 29 Sorenson Decl. Ex. B [filed herein].

The records ultimately recovered add to the public's knowledge, and ultimately to knowledge needed by Congress in learning about the extent to which the Global Assessment Tool treats individuals "as autonomous agents." ¶ 9 Third Naumes Decl. [Document 28-6]. This information is certainly in the public's interest, particularly when Defendants tried to *hide* these extremely salient records from the public by refusing to release these documents "promptly" to Plaintiff. *See also U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (emphasizing that "*the basic purpose*" of FOIA is " ' *to open agency action to the light of public scrutiny*' ") (citation omitted).

That this matter is one of public significance is further demonstrated by the fact that there is public interest in the issue, as mentioned above.

In this case, Plaintiff has presented the description of Plaintiff's role in the academic community and her research on "US-based Global Assessment Tool (GAT) and Azimuth Check (AC) survey." ¶ 2 First Naumes Decl. [Document 10-1]. She has discussed "the GAT in talks and publications." ¶ 4 Third Naumes Decl. [Document 28-6].

Plaintiff is conducting academic research on the psychological health of soldiers. Her request concerned a need for records on the GAT questions used by the Army. ¶ 3 First Naumes Decl. [Document 10-1]. Ms. Naumes has stated that, "[i]n light of ongoing conversations about service-related death and disability, it is important for social scientists such as myself — as well as the media and congressional policy makers — to interrogate the full complement of these programs." ¶ 4 First Naumes Decl. [Document 10-1]. Under the standard applicable in this District, "if it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Morley v. Cent. Intelligence Agency*, 810 F.3d 841, 844

(D.C. Cir. 2016). The successful release of 773 GAT survey questions indicates that Plaintiff is able to complete her research. ¶ 12, Plaintiff's Statement of Material Facts. [Document 28-2].

### 2.   SECOND FACTOR

The second factor—the commercial benefit to the plaintiff—requires an examination of whether the plaintiff had an adequate private commercial incentive to litigate its FOIA demand even in the absence of an award of attorney fees. *Davy*, 550 F.3d at 1158 (noting that second factor focuses on benefit to plaintiff). Plaintiff has no commercial interest in the records at issue, as she has said, "I have neither plans nor intent to monetize or financially benefit in any way from this information." ¶ 4 Third Naumes Decl. [Document 28-6].

### 3.   THIRD FACTOR

The third factor — the nature of the plaintiff's interest in the records — often is evaluated in tandem with the second factor and militates against awarding fees in cases. Plaintiff had a substantial interest in the records sought. There is no concern here that the reason for the request, as well as for the administrative appeal and judicial review, was for anything other than to fulfill Plaintiff's academic mission, which is to "discuss[] in broader forums" the "level of overlap" between "resilience training" in the Army and "programs for civilian audiences." ¶ 3 Third Naumes Decl. [Document 28-6]. Plaintiff has no "plans" or "intent" to "financially benefit any way from this information." ¶ 4 Third Naumes Decl. [Document 28-6].

Worth noting is that the second and third factors, commercial benefit and the plaintiff's interest in the records, "are closely related and often considered together." *Nat'l Sec. Archive*, 530 F. Supp. 2d 198, 201 (D.D.C. 2008).

4.   FOURTH FACTOR

The fourth factor—the reasonableness of the agency's withholding—counsels against a

fee award when the agency had a reasonable basis in law for concluding that the information at

issue was exempt. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27,

45-46 (D.D.C. 2016). (" 'The question is not whether [the Plaintiff] has affirmatively shown that

the agency was unreasonable, but rather whether the agency has shown that it had any colorable

or reasonable basis for not disclosing the material until after [the Plaintiff] filed suit.' " quoting

*Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008).

"The fourth factor . . . considers whether the agency's position 'had a reasonable basis in

law,' *Tax Analysts*, 965 F.2d at 1096, and asks whether the agency was 'recalcitrant in its

opposition to a valid claim or otherwise engaged in obdurate behavior,' *McKinley*, 739 F.3d at

712 (internal citations omitted).' " *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 65

(D.D.C. 2019).

Here the agency failed to perform an adequate search. Plaintiff was required, if it

wanted—and was able to find counsel—to fight for the records involved, to file a fully supported

Cross-Motion for Summary Judgment [Document 10] and an equally full supported Opposition

to Defendant's Renewed Motion for Summary Judgment [Document 28] complete with

significant factual information. There was no justification for what Defendant sought to do: deny

Plaintiff access to records. The agency was also "recalcitrant" because it fought all requests for

records.

This factor heavily favors Plaintiff here. As in *Negley v. Fed. Bureau of Investigation*,

818 F. Supp. 2d 69, 75 (D.C.D. 2011), the agency has never adequately explained why records

were not properly searched for or released. The *Negley* court stated: this type of agency behavior

" 'was exactly the kind of behavior the fee provision was enacted to combat' " (citing *Davy*, 550

F.3d at 1163). Agency behavior has been held to be "unreasonable" where "[o]nly after this

litigation commenced did the [agency] fulfill its obligation under the FOIA" by releasing

information to plaintiff. *Pinson*, 806 F. Supp. 2d 230, 236 (D.C.D. 2011).

F. THE CALCULATION OF FEES PLAINTIFF SEEKS

If a court decides to make a fee award, its next task is to determine an appropriate fee

amount based upon attorney time shown to have been reasonably expended. Accordingly, the

Court of Appeals for the District of Columbia Circuit has held that attorney fees and costs should

be supported by well-documented, contemporaneous billing records. *Nat'l Ass'n of Concerned

Veterans v. Sec'y of Def.*, 675 F. 2d 1319, 1327 (D.C. Cir. 1982) (*per curiam*) ("Attorneys who

anticipate making a fee application must maintain contemporaneous, complete and standardized

time records which accurately reflect the work done by each attorney."). Here, Plaintiff has

supplied the contemporaneously kept records of the one attorney and the seven (7) paralegals

involved. ¶ 15 Sorenson Decl. Ex. B [filed herein]. Plaintiff has presented charts to assist the

Court in understanding the work necessary to bring this case to a conclusion. Ex. F. [filed

herein]. Plaintiff has provided a complete accounting of all billable and non-billable time to

assist the Court. Ex. C, D, E, J. [filed herein]. The starting point in setting a fee award is to

multiply the number of hours reasonably expended by a reasonable hourly rate—a calculation

that yields the "lodestar." See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1982). A plaintiff's

properly documented lodestar is presumed reasonable. *Baker v. D.C. Pub. Schs.,* 815 F. Supp. 2d

102, 107–08 (D.D.C. 2011).

Although "contests over fees should not be permitted to evolve into exhaustive trial-type proceedings," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1324 (D.C. Cir. 1982), when attorney fees are awarded, courts have found that the hours expended by counsel for the plaintiff pursuing the fee award also are ordinarily compensable, but can be reduced if the court finds them excessive.

Plaintiff won release of most of the records. It is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) n.11.

In *Electronic Privacy Information Center v. DHS*, the Court did "not award EPIC any fees for its work on summary judgment because, as discussed earlier, EPIC's arguments on summary judgment were wholly rejected and those claims were wholly independent from any claims on which EPIC succeeded in this litigation. EPIC did not prevail on a single issue raised on summary judgment." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 51 (D.D.C. 2016). Plaintiff had only one claim and she won on that claim, namely that Defendant violated FOIA by not releasing records in a timely fashion. This sentiment is echoed in *Judicial Watch*. "When a plaintiff presents 'distinctly different claims for relief that are based on different facts and legal theories,' the limit on awards to 'prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.' *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006).

Even in cases where there were distinct claims, "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a

claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Here, there are not even distinct claims, so the work should certainly not be separated by alternate theories or claims.

Plaintiff has requested $24,924.10 in fees for time spent offering, reviewing, making, and otherwise engaging in the settlement process and filing her Motion for Reasonable Attorney Fees and Costs [filed herein], particularly the settlement of attorney's fees and costs of litigation, Ex. C., Ex. J. [filed herein]. The district court has ruled, in at least two cases, that reasonable time spent on settlement is recoverable. Courts encourage parties "to resolve their differences without motions." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec. (EPIC II)*, 197 F. Supp. 3d 290, 297 (D.D.C. 2016), *Coffey v Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.C.D. 2018).

It is also well-settled that reasonable time and expenses spent preparing a fee petition are compensable. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 696 F. 3d 1, 6 (D.C. Cir. 2012); *Comm'r v. Jean*, 496 U.S. 154 (1990). These awards are not a "windfall."

Concerning an award for "fees on fees," the District Court has observed, "upon close scrutiny of the record, that the hours spent by the plaintiff on these tasks were reasonably expended and do not constitute a 'windfall' for the attorneys." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 240 (D.C.D. 2011). Mr. Sorenson has spent 23.4 hours on the fee petition ¶ 15 Sorenson Decl. Ex. B. [filed herein]. His paralegals, including Ms. Mendez ("HM") and Mr. Albertson ("TJA") have spent a total of 48.7 hours on the fee petition. Ex. C. [filed herein]. At the Fitzpatrick Matrix rates for 2022, this adds $24,924.10 to the request for attorney and paralegal fees during the "fees on fees" phase, after reduction. Exhibit J shows various charts to understand the reductions for each phase of the case. Ex. J [filed herein].

Finally, in addition to allowing the recovery of reasonable attorneys' fees, the FOIA fee provision authorizes the Court to award a prevailing plaintiff any "other litigation costs reasonably incurred . . . ." 5 U.S.C. § 552(a)(4)(E). Plaintiff incurred reasonable costs for the filing fee ($402, Ex. G, [filed herein]) and postal service costs ($26.15, Ex. H, [filed herein]). Plaintiff incurred a total of $428.15 of these costs. Defendant did not respond to the reasonableness of these costs. Ex. I [filed herein].

A district court has discretion to award any costs reasonable in FOIA litigation. In *Reyes v. NARA*, aside from employing two attorneys, the Court held "Plaintiff's request to be otherwise reasonable given the amount of work which was required." *Reyes v. U.S. Nat'l Archives & Records Admin.*, 356 F. Supp. 3d 155, 169 (D.D.C. 2018). Here, Plaintiff did not even employ and bill for two attorneys. "Given that both parties provided equal amounts of information, the Court finds that Plaintiff did not add 'superfluous information' to the filing." *Reyes v. U.S. Nat'l Archives & Records Admin.*, 356 F. Supp. 3d at 171. In Plaintiff's Opposition, Plaintiff did not add any superfluous information or make arguments substantially different from the central claim in previous motions. Other factors in the reasonableness analysis "included a review of the disclosures that had been made thus far, an explanation of disputed redactions, a dispute on the scope of Defendant's search, and a briefing schedule." *Id.* Plaintiff has attached an explanation of time and a copy of the attempt to narrow the scope, and Plaintiff did not spend "unreasonable amounts of time on their filings," *Id.* at 172.

Plaintiff has applied significant billing judgment in submitting her request for an award. In addition to using the 2021 and 2022 Fitzpatrick rates for time billing in a case that is now going into 2023, Plaintiff has reduced her billing by specific reductions on all phases of the litigation, reduced phase 6 by an across-the-board 75 percent reduction, and billed for only one

attorney on the case, even though two attorneys worked on the case but were billed at clerk rates. This all shows that Plaintiff has applied significant billing judgment and thus, the award sought by Plaintiff is reasonable in all respects.

## III.

## <u>Conclusion</u>

## <u>PLAINTIFF HAS PROVEN REASONABLE FEES AND COSTS</u>

Defendant has fought Plaintiff at the request stage and fought Plaintiff at the briefing stages of this judicial review. Defendant continued resisting Plaintiff's legitimate request for records through the filing of the Defendant's summary judgment motion. Through this entire process, the Army held the view that Plaintiff should be denied access to vital public records. All through this period Defendant stopped Plaintiff's access to the records. Plaintiff won all but one major motion in this case.

Following the potentially fatal defense motion, Plaintiff marshaled the legal and factual bases to show the Army that Plaintiff would win this lawsuit. After filing the action, Defendant changed its position and released some records, Following two court orders, Defendant released virtually all of the records Defendant sought.

Plaintiff sought to lower the cost of the presentation of this motion and the accompanying declarations and exhibits, Plaintiff proposed to narrow the issues for the Court to adjudicate but Defendant refused. ¶ 23 Sorenson Decl. Ex. B [filed herein]; *see also* Ex. I [filed herein]. Because of the continued resistance, first on the records themselves, and now on the fees, Plaintiff has filed this extensive documentation justifying the fees and litigation costs Plaintiff seeks. Plaintiff's counsel undertook this litigation on a contingent fee basis. ¶ 2 Sorenson Decl.

Ex. B [filed herein]. The fees requested are reasonable in rate and in time presented and the costs

are reasonable. ¶ 13, 16, 24, 26, 29, 34, 35 Sorenson Decl. Ex. B [filed herein].

The Court of Appeals for the District of Columbia Circuit has added its view:

> "The government cannot litigate tenaciously and then be heard to complain about
> the time necessarily spent by the plaintiff in response." *Copeland* v. *Marshall*, 641
> F. 2d 880, 904 (D.C. Cir. 1980) (*en banc*).

For the foregoing reasons, with the reductions of time and reductions of rates shown,

Plaintiff respectfully requests that the Court order Defendant to pay the total reasonable and

necessary attorney fees: for fees on the merits in the amount of $94,337.45, for fees to prepare

the Motion and its attachments in the amount of $24,924.10, and for other litigation costs

reasonably incurred in the amount of $428.15, for a total award of $119,689.70.


DATED this 10th day of February, 2023.


Respectfully submitted,


/s/   C. Peter Sorenson

C. Peter Sorenson
DC Bar No. 438089
PO Box 10836
Eugene, Oregon 97440
541-606-9173
peter@sorensonfoialaw.com

*Attorney for Plaintiff*