UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH KATHERINE NAUMES, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF THE ARMY, <br><br> Defendant. | Civil Action No. 21-1670 (JEB) |

## MEMORANDUM OPINION

In February 2019, Sarah Katherine Naumes submitted a Freedom of Information Act request to the Department of the Army, seeking access to the entirety of its Global Assessment Tool (GAT) — a mental-fitness questionnaire for U.S. soldiers — as well as associated documents. The Army disclosed no documents to Naumes over the course of two and a half years of correspondence. She thus filed suit here, which precipitated the release of some material. Over the course of the litigation, Plaintiff obtained more records via both court orders and voluntary release by Defendant.

The merits litigation now completed, Naumes moves for an award of attorney fees and costs. Because she substantially prevailed in most of her suit and the multi-factor entitlement inquiry favors a fee award, the Court will grant her Motion in part. Plaintiff's requested sum, however, will be reduced based on her failure to prevail in certain phases of the litigation. The Court will ultimately award her $111,425.59.

1

I.	**Background**

As a past Opinion details the full background of this suit, see Naumes v. Dep't of the Army, 588 F. Supp. 3d 23, 43 (D.D.C. 2022), the Court need only briefly recount the new facts relevant to the present Motion.

On February 28, 2019, Plaintiff filed a FOIA request seeking three categories of documents: all versions of the GAT questionnaire from 2008 through the present, all informed-consent forms associated with those questionnaires, and the list of recommendations given under the agency's ArmyFit portal. See ECF No. 1 (Compl.), ¶ 11. Such recommendations discuss how individuals can improve their mental and physical wellness — *e.g.*, through practicing mindfulness and maintaining coping skills. See ECF No. 9-5, Exh. 104 (Samples of ArmyFit Recommendations).

Having vainly waited for two-and-a-half years to receive her requested documents, Naumes filed this suit on June 22, 2021. Finally spurred to action, the Army agreed on August 6 to release a first set of documents to her. See ECF No. 7-1 (Def. SMF), ¶¶ 12–13; ECF No. 9-16, Exh. 115 (First Document Disclosure). This release addressed the first two categories of requested documents — the GAT survey questions and informed-consent forms. There, the Army disclosed to Naumes 773 of the questions on the GAT, but withheld an additional 534 questions under FOIA Exemption 4, which protects privileged and confidential commercial information — in this case, copyrighted information. See First Document Disclosure at 2; ECF No. 7-3 (Declaration of Kathleen Vaughn-Burford), ¶ 8. All corresponding informed-consent forms were also produced since those forms are included with the surveys themselves. See Vaughn-Burford Decl., ¶ 5.

Another set of records responsive to the third category — the list of ArmyFit recommendations — was produced on October 23, 2021. See Samples of ArmyFit Recommendations at 2. These records were described as "sample[s]" of the recommendations and presented in a "file [that] included five pages, each containing a single screenshot of information, derived from [the] ArmyFit" portal. See ECF No. 10-1 (Declaration of Sarah Katherine Naumes Decl.), ¶ 54; Vaughn-Burford Decl., ¶ 10.

So far, so good. But Naumes at this point was still dissatisfied with the incompleteness of the recommendations disclosure; redactions on the GAT survey, on which 534 questions were withheld; and the fact that at least one of the GAT surveys and its accompanying informed-consent forms were missing. See ECF No. 9-1 (Naumes Opp. to First MSJ), ¶¶ 52, 54. Defendant nonetheless proceeded on October 26, 2021, to file a motion for summary judgment, which Naumes contested with her own motion for summary judgment. See ECF No. 7 (Def. MSJ); Naumes Opp. to First MSJ; ECF No. 10 (Naumes Cross MSJ).

On February 28, 2022, this Court issued an Opinion that granted in part and denied in part the motions. See Naumes, 588 F. Supp. 3d at 30–31. It agreed with Plaintiff that the ArmyFit recommendations disclosure was incomplete, but ruled that Defendant was only obligated to release some and not all requested documents. On the issue of survey redactions, the Court concluded that the best way to solve the Exemption 4 dispute was to ask the copyright holders themselves whether they would consent to the release of their sets of questions, known as "scales." As to the missing GAT survey, the Court held, "Despite the confusion about the different categories of the GAT, Defendant has described a good-faith effort to identify this document" and thus had no duty to further search. Id. at 36. The Court also declined to penalize

the Army despite Plaintiff's claim that it had "violated FOIA's statutory time requirements." Id. at 33 (quoting ECF No. 9-20 (Memorandum in Support) at 9).

The Court then ordered the following remedy:

> [B]y March 14, 2022: 1) the Army [shall] search for and release the pages offering Spiritual, Family Fitness, Social Fitness, and Physical Fitness Dimension Recommendations linked to in the records already provided; 2) release the GAT survey questions that derive from sources available to the general public; 3) contact the copyright holders for the questions from the remaining non-public source materials and inform the Court as to their position on release; and 4) provide supplemental briefing on how the GAT survey questions are assembled from the underlying sources.

Naumes, 588 F. Supp. 3d at 43.

On May 10, 2022, the Army proceeded to contact the copyright holders. All permitted the release of the questions, with the exception of Dr. Nansook Park, who holds three of the fourteen copyrights. See ECF No. 23 (Dep't of Army Status Report). Those not belonging to Dr. Park were released. See ECF No. 35-2 (Fourth Naumes Decl.), ¶ 10. Defendant then renewed its Motion for Summary Judgment, again contending that it had released all possible documents. Naumes opposed, arguing that Dr. Park's three scales were still not subject to the Exemption 4 shield. See ECF No. 28 (Naumes Opp. to Second MSJ) at 1. On December 19, 2022, this Court granted the Motion and entered judgment for the Army. See ECF No. 32 (Order on Ren. MSJ).

With the merits of the litigation now terminated, Plaintiff has filed this suit to recover attorney fees.

## II.     Legal Standard

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has

4

substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i); see Brayton v. Off. of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011). "This language naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton, 641 F.3d at 524 (quoting Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Plaintiffs are "eligible" to receive fees if they have "substantially prevailed." Id.; Negley v. FBI, 818 F. Supp. 2d 69, 72–73 (D.D.C. 2011). In such a circumstance, the court must then "consider[] a variety of factors" to determine whether they are "entitled" to fees. Brayton, 641 F.3d at 524–25; see also Davy v. CIA, 550 F.3d 1155, 1158–59 (D.C. Cir. 2008). If plaintiffs are both eligible for and entitled to receive fees, the court proceeds to "analyze whether the amount of the fee request is reasonable." Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 237 (D.D.C. 2011).

**III.    Analysis**

Given that framework, the Court will first determine whether Naumes may receive fees; finding that she may, it next assesses whether she should receive them. Last the Court determines the precise amount of fees that should be awarded, looking at both the merits and the fee litigation.

    A.   Eligibility

A FOIA "complainant has substantially prevailed" and is consequently eligible for a fee award if it "has obtained relief through either – (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Plaintiff invokes both subsections as the basis for her fee request. While the former is largely self-explanatory, the key question under the latter, aptly named the "catalyst theory," is whether "the institution and

5

prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981); see also Davis v. DOJ, 610 F.3d 750, 752 (D.C. Cir. 2010) ("FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records," regardless of whether the plaintiff obtained any court-ordered relief.).

Defendant makes two main arguments for reducing attorney fees based on eligibility. It first contends that Naumes may recover no fees for her failed Opposition to the second Motion for Summary Judgment. See ECF No. 36 (Opp. to Fee Mot.) at 7. Defendant also more broadly argues that Plaintiff did not substantially prevail on all issues and so her remaining fees must be cut by 50%. Id. The Court looks at each in turn.

1. *Success in Second MSJ*

Begin with Defendant's contention that Plaintiff cannot recover any attorney fees on her second Motion for Summary Judgment. See Opp. to Fee Mot. at 7. The Court agrees with Defendant's position on this matter. On December 19, 2022, it granted Defendant's Motion, finding that the agency properly invoked Exemption 4 to shield the three questions to which civilian-scientist Dr. Park holds a copyright. See Order on Ren. MSJ. The Court recognizes Plaintiff's effort to reduce the fees for this Motion in response to the Army's objections. See ECF No. 37 (Reply to Fee Mot. Opp.) at 4. A reduction, however, is insufficient: Plaintiff garnered no relief on this Motion and so should not recover any fees. The Court will accordingly reduce Plaintiff's fees sought for this Motion to zero in its final calculation.

2. *Success Prior to Second MSJ*

The Army next asserts that a 50% cut for attorney fees up until the second Motion for Summary Judgment is warranted. See Opp. to Fee Mot. at 7. Although Defendant fails to

explain the basis for this assertion, it is well established in the caselaw that if Naumes obtained a less-than-complete victory, a reduction in fees follows. Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees."); see also Hall v. CIA 115 F. Supp. 3d 24, 29 (D.D.C. 2015) (applying Hensley to FOIA litigation).

The foundational case in this area, Hensley, requires a two-step inquiry: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" George Hyman Const. Co. v. Brooks, 963 F.2d 1532, 1535 (D.C. Cir. 1992) (discussing Hensley, 461 U.S. at 434). Because Plaintiff's entire suit centered on the FOIA claim on which she largely succeeded, the Court focuses only on the second inquiry. Goos v. Nat'l Ass'n of Realtors, 997 F.2d 1565, 1569 (D.C. Cir. 1993); Naumes, 588 F. Supp. 3d at 23. This will require the Court to assess "whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." Brooks, 963 F.2d at 1535.

Naumes was successful in obtaining the majority of the documents she originally sought. See ECF No. 28-6 (Third Naumes Decl.), ¶ 10. Her FOIA request asked for three main categories of documents: the entirety of the GAT questionnaires, their accompanying informed-consent forms, and the ArmyFit recommendations given to soldiers and their families. She substantially prevailed with respect to all three categories.

As to the first, Plaintiff received seven GAT questionnaires in total. Notably, the Army only agreed to release these questionnaires after Naumes filed her Complaint. See Naumes Opp. to Second MSJ at 4. The timing of these post-litigation voluntary disclosures indicates that her litigation was the catalyst in effecting release. See 5 U.S.C. § 552(a)(4)(E)(ii) ("a voluntary or

unilateral change in position by the agency" is still relief brought on by litigation).  Naumes also sought at least one additional survey, the GAT for Basic Training, which the Army could not locate.  This Court ultimately determined that the Army had completed an adequate search for that additional questionnaire.  See Naumes, 588 F. Supp. 3d at 36.

When initially released, the seven questionnaires were also heavily redacted.  As a result of the lawsuit, this Court ordered the Army to release all non-copyrighted questions, as well as to contact copyright holders regarding the release of their copyrighted scales and questions.  Naumes, 588 F. Supp. 3d at 42–43.  That Order led to the successful release of all questions, save three of the scales copyrighted by Dr. Park.  See Third Naumes Decl., ¶10.  All told, Plaintiff received seven of the eight GAT questionnaires she requested, and she successfully forced the Army to disclose all of the scales within the questionnaires, with the exception of Dr. Park's three.  As she herself notes in her Third Declaration from October 11, 2022: "[She] now ha[s] access to most of the questions in the GAT, including most of Dr. Park's questions."  Id.  All told, Plaintiff obtained the large majority of documents she sought in this category.

The second category is simple: Plaintiff received all informed-consent forms associated with the disclosed questionnaires.

Finally, Plaintiff was partially successful in obtaining the ArmyFit recommendations.  Although the Court ruled that "'FOIA imposes no duty on the agency to create records,' and the Army need not assemble a new record in the form of a complete list of recommendations," Naumes, 588 F. Supp. 3d at 36 (quoting Forsham v. Harris, 445 U.S. 169, 186 (1980)), the Court nonetheless required disclosure of all links in the screenshots previously disclosed by the Army.  Id.  The Army released those five screenshots, furthermore, only after Plaintiff filed this

Complaint, once again affirming that her litigation precipitated disclosure. See ECF No. 35-12 (Fee Mot.) at 9.

All told, as Naumes obtained the vast majority of what she requests, the Court will implement only a 5% trim on fees incurred up until the second Motion for Summary Judgment when it calculates Naumes's ultimate fee award.

B. Entitlement

The entitlement inquiry is designed to ensure that attorney fees are disbursed in a manner consistent with the purpose of FOIA's fee provision, which "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold." Davy, 550 F.3d at 1158 (quoting Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 711 (D.C. Cir. 1977)). Instead, the fee provision serves the "more limited purpose" of "remov[ing] the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." Id. (quoting Nationwide, 559 F.2d at 711). In considering that purpose, the D.C. Circuit has distinguished between a "plaintiff who seeks to advance his private commercial interests and thus needs no incentive to file suit, and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." Id.

This Court thus considers four principal factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992). "No one factor is dispositive," Davy, 550 F.3d at

9

1159, and "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion." Tax Analysts, 965 F.2d at 1094.

  1. *Factor One: Public Benefit*

The first factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." Davy, 550 F.3d at 1159. In evaluating this criterion, it is important to note that "[t]he simple disclosure of government documents does not satisfy the public interest factor." Alliance for Responsible CFC Policy, Inc. v. Costle, 631 F. Supp. 1469, 1471 (D.D.C. 1986) (citing Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979)). Instead, the Court must determine whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting Fenster, 617 F.2d at 744) (internal quotation marks omitted).

This factor leans in Plaintiff's favor. Naumes is an academic researcher looking to gain more insight into a tool used by the Army on millions of soldiers and their family members to assess their psychological health and offer recommendations. See Naumes Decl., ¶¶ 2–4. By 2009, 3.4 million GAT surveys had already been administered, and Plaintiff estimates that millions more have been used since then. Id., ¶¶ 3–4. Despite the widespread use of this survey as a mechanism to assess and offer recommendations relating to the psychological well-being of soldiers, researchers in 2016 studying the GAT tool authored a report stating that "continued research is needed to confirm the validity of the GAT." Id., ¶ 4. Plaintiff further highlights how tools used by the military often seep into mainstream society, making rigorous studies and evaluations of military tools a task that can have wide-ranging impacts. Id. With all this in mind, there is evidently a public interest in research involving the GAT assessment tool.

2. *Factors Two and Three: Commercial Benefit & Nature of Intent*

Factors two and three — the "commercial benefit" and "plaintiff's interest," which "are closely related and often considered together" — favor Plaintiff. Tax Analysts, 965 F.2d at 1095.

Defendant claims that the personal benefits she will achieve by completing her Ph.D. disqualify this case from passing the "commercial benefit" and "plaintiff's interest" factors. See Opp. to Fee Mot. at 10. Even if Plaintiff obtained some benefit from the disclosure through educational advancements, that would not render her requests primarily commercial. "Congress did not intend for scholars … to forego[sic] compensation when acting within the scope of their professional roles." Campbell v. DOJ, 164 F.3d 20, 35–36 (D.C. Cir. 1998). The Court concludes that she possesses only a scholarly, not a commercial, interest in the requested information, and so these factors tip in her favor.

3. *Factor Four: Reasonableness of the Withholding*

This final factor requires the Court to "consider[] whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" Davy, 550 F.3d at 1162 (first quoting Tax Analysts, 965 F.2d at 1096, then LaSalle Extension Univ. v. FTC, 627 F.2d 481, 486 (D.C. Cir. 1980)). Significantly, the burden remains with the agency: "The question is not whether [plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [plaintiff] filed suit." Id. at 1163.

This factor is a closer call than the others. The Court agrees that the Army's rationale for withholding the documents — namely, the copyright concerns — was not entirely unfounded, as

11

Dr. Park's refusal to release her copyrighted questions illustrates. See Dep't of Army Status Report. The Court has already declined to award attorney fees for that portion of the litigation. The real question, accordingly, is whether the Army had a reasonable position as to the other GAT questions, informed consents, and GAT recommendations.

Defendant is on considerably thinner ice here. In fact, the voluntary disclosures demonstrate that the Army itself does not even take the position that its withholding of documents was reasonable. The Court thus concludes that the fourth factor similarly leans in favor of Plaintiff's entitlement to attorney fees.

In keeping with Congress's intention that FOIA's fee provision "encourage . . . suits that benefit the public interest," LaSalle Extension Univ., 627 F.2d at 484, Plaintiff is entitled to fees.

C. Calculating Fees

The Court must now calculate Naumes's precise award. The "usual method of calculating reasonable attorney fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)). That number may then be adjusted to reflect "the significance of the overall relief obtained by the plaintiff." Judicial Watch, Inc., 774 F. Supp. 2d at 233 (quoting Hensley, 461 U.S. at 435).

Defendant does not dispute Naumes's sought rate under the Fitzpatrick Matrix nor many features of her timekeeping. Its main contention appears to be that her attorney's hours were excessive in some specific respects given his specialization in FOIA litigation. See Opp. to Fee Mot. at 8. The Court is mindful here that "'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal . . . is to do

12

rough justice, not to achieve auditing perfection.'" Elec. Privacy Info. Ctr. v. National Security Agency, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (alteration in original) (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)). "The Court therefore need not — and should not — scrutinize every billing entry." Am. Oversight v. U.S. Dep't of Justice, 375 F. Supp. 3d 50, 70 (D.D.C. 2019). With all this in mind, the particular hours to which defendant objects —for example, 1.8 hours spent on "rudimentary FOIA questions," 4.4 hours revising Plaintiff's declaration, and 3 hours reviewing the intersection of copyright and FOIA as well as prevailing-party status — hardly seem excessive or unreasonable. See Opp. to Fee Mot. at 8. Following this "rough justice" approach, and considering the earlier trimmings, the Court does not take issue with Plaintiff's rates or remaining hours. National Security Agency, 87 F. Supp. 3d at 235 (internal quotation marks omitted).

Getting down to business, the Court thus may now calculate Plaintiff's merits award. Plaintiff sought $81,208.70 in attorney fees prior to her failed Opposition to the second Motion for Summary Judgment; reducing that sum by 5% yields a total of $77,148.27. As the Court will grant no fees for that Opposition, her merits award will be $77,148.27.

A postscript before moving on to fees on fees: Plaintiff also seeks $428.15 in costs, which covers her filing fee and postal fees incurred in serving Defendant. Defendant does not specifically object to this sum, which the Court finds reasonable and will award.

D. Fees on Fees

The Court finally concludes by considering whether to add in fees for time spent on this fee litigation, known colloquially as "fees on fees." Courts in this district have concluded that awards of "fees on fees" should be reduced to exclude the amount of time spent unsuccessfully defending fee requests denied by the Court. See, e.g., Nat'l Veterans Legal Servs. Program v.

13

U.S. Dep't of Veterans Affairs, 1999 WL 33740260, at *5–6 (D.D.C. 1999); see also Commissioner, INS v. Jean, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").

As discussed above, Plaintiff's success on all of her motions was substantial but incomplete. The Court, accordingly, will follow the lead of other courts in this district and award plaintiff "the same percentage of fees for fee litigation as it does for fees on the merits." Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 982 F. Supp. 2d 56, 61 (D.D.C. 2013). This approach ends up being functionally similar to ratably reducing the number of hours Plaintiff's counsel spent on this Motion then multiplying that sum by the applicable USAO Matrix rates.

Naumes received 82% of the original attorney fees she requested on the merits, totaling an 18% reduction overall. Given that Defendant develops no further substantive challenge here, the Court will concomitantly reduce the fees on fees by 18%. The resulting fees-on-fees recovery will be $34,267.06. Adding that sum to Plaintiff's merits and costs awards yields a grand total of $111,843.48.

| Summary Totals | Plaintiff's Sought Award | Court's Final Award |
|---|---|---|
| Prior to Second MSJ | $81,208.70 | $77,148.27 |
| Second MSJ | $13,128.75 | $0 |
| Fees on Fees | $41,789.10 | $34,267.06 |
| Costs | $428.15 | $428.15 |
| **Grand Total** | **$136,554.70** | **$111,843.48** |

**IV.     Conclusion**

In sum, after all disputes have been resolved and all discounts have been applied, the Court will award Plaintiff $111,843.48 in attorney fees and costs. A separate Order so stating shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: July 5, 2023